## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE  DIVISION

| | | |
|---|---|---|
| **ARNOLD J. MORALES MANCIA,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:19CV00625 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MARCUS ELAM, ET AL.,** | ) | Judge James P. Jones |
| | ) | |
| Defendants. | ) | |

*Arnold J. Morales Mancia, Pro Se Plaintiff; Stacie A. Sessoms, Office of the Attorney General, Criminal Justice & Public safety Division, Richmond, Virginia, for Defendants.*

In this action under 42 U.S.C. § 1983, the defendants have filed a Motion for Summary Judgment, to which the plaintiff, a Virginia inmate proceeding pro se, has responded. Finding the motion ripe for consideration, and having carefully reviewed the record, I conclude that summary judgment for the defendants must be granted.

### I. Background.

When his claims arose, Arnold J. Morales Mancia was an inmate in the custody of the Virginia Department of Corrections ("VDOC"), incarcerated at Red Onion State Prison. The defendants are Marcus Elam, Jeffery Kiser, Larry Collins, and M. L. Counts. Morales Mancia alleges three claims related to a prison disciplinary proceeding conducted by defendant Counts: (1) Counts deprived Morales Mancia of due process by refusing to obtain an inmate witness statement he

requested and refusing to review surveillance camera video footage; (2) Counts showed bias against Morales Mancia; and (3) Collins, Kiser, and Elam failed to correct these due process violations on appeal. As relief, Morales Mancia seeks expungement of the disciplinary conviction and monetary relief.

Based only on the allegations of the Complaint, I earlier denied the defendants' Motion to Dismiss as to these claims. *Morales Mancia v. Elam*, No. 7:19CV00625, 2020 WL 4572359, at *3 (W.D. Va. Aug. 7, 2020). Now, on summary judgment, I reviewed submitted evidence from the defendants, which includes Hearing Officer Counts' affidavit, documentation from the disciplinary proceedings, and an audio recording of the disciplinary hearing. That evidence shows as follows.

On May 2, 2018, Morales Mancia was served a Disciplinary Offense Report ("DOR"), charging him with a Disciplinary Offense Code 137A — lewd or obscene acts directed toward or in the presence of another. The DOR charged:

> On 5/2/2018 at approximately 10:45 A.M., I nurse A. Mullins entered C 1 pod, Prea, [Prison Rape Elimination Act] announcement made. Offender Morales #1365205, C-103 was up on his sink in the window with penis in hand facing my direction. I, A. Mullins told the offender to get down, he refused, I told him a 2nd time, he still refused until the officers got to his cell.

Counts Aff. Enclosure B, Disciplinary Offense Rep. 50, ECF No. 30. Morales Mancia was also advised of his due process rights. For a Category I offense, he had the right to question the reporting officer in person. He also exercised his rights to

request other witnesses or statements and documentary evidence, to receive 24-hours' notice to prepare for the hearing, and to appear at the hearing. Although Morales Mancia refused to sign the DOR, he received the forms to request witnesses and evidence.

Morales Mancia's hearing was scheduled for May 7, 2018, and then rescheduled two times because a staff member or witness was unavailable. On June 8, 2018, defendant Counts served as the Disciplinary Hearing Officer ("DHO") and conducted the disciplinary proceedings on the Offense Code 137A charge. Counts opened the hearing by reading the charge into the record. She advised Morales Mancia of his rights, recognized his request for and appointment of a staff advisor, confirmed that Morales Mancia had had time to go over his supporting documentation with his advisor, and confirmed that Morales Mancia had no questions about his due process rights. Counts asked Morales Mancia how he pled, and he stated not guilty.

Counts then addressed Morales Mancia's first Witness Request form, which sought a statement from inmate Austin Eckert. Morales Mancia alleged that Eckert was at his cell door when Nurses Mullins and Cantrell[1] were in Morales Mancia's pod. Morales Mancia believed Eckert would state that Nurse Cantrell was standing

---

[1] In various submissions, this individual is referred to as Nurse Cantrell or Nurse Contrell.

near the pod office, making it impossible for Nurse Mullins to see straight into the cell door window to the sink in C103, Morales Mancia's cell. Morales Mancia thus wanted Eckert to provide evidence impeaching Nurse Mullins' credibility. DHO Larry Mullins, in preparation for a previously scheduled hearing time, had determined that Eckert's testimony was not relevant and refused to obtain a statement from him. Counts stated that she agreed with DHO Mullins' decision. In Counts' affidavit, she states that she believed Eckert could not have reliable information about where Morales Mancia was inside his cell and where Nurse Contrell was in the pod, because Eckert was housed in C123 — on the same wall as Morales Mancia's C103, but on the floor above it. Based on this locational information, Counts avers that Eckert's testimony was irrelevant to the proceedings.

At the hearing, Counts next addressed Morales Mancia's form requesting documentary evidence, which asked for review of footage from the C1 pod cameras. Counts considered this request and determined that it was not seeking documentary evidence. At the time of Morales Mancia's hearing in June 2018, the VDOC did not classify video footage as documentary evidence, and inmates could not review pod video footage during disciplinary hearings because of security concerns. Counts explained to Morales Mancia that if she needed to review the video, she had authority to do so during the hearing. She states in her affidavit, however, that the requested camera footage would not have showed the inside of Morales Mancia's cell, so it

would not have showed whether Morales Mancia was masturbating towards Nurse Mullins as charged, or not.

Counts also advised Morales Mancia that the written questions on his Reporting Officer Request form were not relevant. Counts explained that because the charge was a Category I offense, Mullins as the reporting officer would be present at the hearing for Morales Mancia to question in person.

Counts determined that Morales Mancia's requested Witness Statement from Officer Phillips was relevant. Morales Mancia believed Phillips would testify that by the time he arrived at Morales Mancia's cell, he saw the inmate working out and not masturbating toward the nurse. Counts Aff. ¶19, ECF No. 30. Specifically, Phillips' statement was that

> [o]n 5/2/18, at approximately 10:45 a.m., I CO Philips was conducting pill pass with Nurse A. Mullins in C-1 pod. At this time, Nurse Mullins told me that Offender Morales was standing on his sink with his penis in his hand masturbating in her direction. I then approached the offender's cell door and observed the offender exercising. While I did not witness the offender masturbating towards Nurse Mullins, the offender did apologize to me when I approached him later in the day.

*Id.* at ¶20. Phillips testified at the hearing that his statement was correct. When Counts asked Morales Mancia if he had any questions for Phillips, Morales Mancia answered that he did not.

Counts then asked Nurse Mullins, as the reporting officer, to verify that the information in her written statement was correct. Nurse Mullins did so and asked

that her statement be considered as her testimony.  Counts then read Nurse Mullins'
statement into the record.  Nurse Mullins verified that Morales Mancia was the
inmate she had observed in her report.  Counts then asked Morales Mancia if he had
any questions for Nurse Mullins.  Morales Mancia complained that Counts had
rejected his written questions for Nurse Mullins as irrelevant.  Counts asked Morales
Mancia what his question was.  Morales Mancia contended that his written questions
were relevant, arguing that from where Nurse Mullins was standing in the pod area,
there was no way she would have been able to see inside his cell to observe him
masturbating.  He did not ask the nurse any questions, however.  Counts asked
Morales Mancia if that argument was his statement.  Morales Mancia responded by
asking why he was having a hearing 34 days after the incident.  Counts explained
that authorized continuances had pushed back the hearing date, based on the
unavailability of the reporting officer or witnesses.

At this point, Counts asked Morales Mancia if he had anything else he wanted
her to consider.  He repeated that he wanted her to review footage from the four
cameras in the pod and to ignore the testimony of Nurse Mullins and Officer Phillips
as witnesses.

Counts found Morales Mancia guilty of the offense charged.  She stated her
reasons in writing as follows:

> Nurse Mullins testified that as she entered C-1 pod the Prea
> announcement was made.  Offender Morales #1365205 was seen on his

sink with penis in hand facing her direction.  Nurse Mullins told the offender to get down twice, both times he refused until the officers got to his cell.  Offender denied committing this offense.  I[,] IHO Counts[,] determined positive identification was made of the offender and the actions observed by Nurse Mullins.  I find the actions were intentional and were considered to be lewd.  Guilty decision rendered.

Counts Aff. Enclosure B, Decision of Hr'g Officer 51, ECF No. 30.

Counts asked Morales Mancia if there was any other information he wished her to consider regarding the appropriate penalty, and he suggested six months with no telephone privileges, which had been the prehearing penalty offer he had rejected. Instead, Counts determined that a $15 fine was the appropriate penalty for Morales Mancia's offense.  Morales Mancia received an appeals packet, and the hearing concluded.

In Morales Mancia's appeals, he offered a more complete account of the events of May 2, 2018, than he had during the disciplinary hearing itself:

I have no knowledge of such incident reported by Nurse Ms. Mullins because at the time she was in C1 pod I didn't know she was in C1 pod due to the fact that I was in the back of the cell doing my daily routine as I do from Monday through Friday.  I start working out from 9:00 AM to 11:00 AM until lunch tray arrive to cell.  So every knowledge that I have about where Ms. Mullins along with Nurse Ms. C[a]ntrell were standing up and what they were doing on that date . . . I got it from offender Austin Eckert.

Compl. Ex. 4 at 4, ECF No. 1-1.  Morales Mancia also stated on appeal that Eckert would have testified that he did not hear Nurse Mullins telling Morales Mancia to get down from the sink, and that Officer Phillips also did not mention hearing any

Case 7:19-cv-00625-JPJ-PMS   Document 43   Filed 09/13/21   Page 8 of 18   Pageid#: 532

such orders from the nurse.  At all levels of appeal, however, the reviewers (Collins, Kiser, and Elam) found no due process violations and upheld Counts' findings.

On summary judgment, the defendants argue that they are entitled to qualified immunity and that Morales Mancia received all due process protections to which he was entitled.  Morales Mancia contends that Counts denied him due process by refusing his requested inmate witness statement and his request for review of video to bolster that witness's testimony.

## II. DISCUSSION.

The court should grant summary judgment only when the pleadings, declarations or affidavits, and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett ex rel. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A genuine dispute of fact for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  On summary judgment, if there is a genuine dispute of fact, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

When a motion for summary judgment is made and is properly supported by affidavits and other appropriate evidence, the nonmoving party may not rest on the

-8-

mere allegations or denials in his pleadings. *Anderson*, 477 U.S. at 256. Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find in his favor. *Id.* at 256–57.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV § 1. Where a claimant asserts procedural due process claims, as Morales Mancia does, the court must first consider whether the inmate has asserted a protected interest and, if so, whether he was afforded the minimum procedural protections required by the Fourteenth Amendment before he was deprived of that interest. *Incumaa v. Stirling*, 791 F.3d 517, 526 (4th Cir. 2015).

> When a penalty for a disciplinary infraction does not affect the length of an inmate's term of confinement, his constitutionally protected *liberty* interests are generally limited to freedom from restraint that imposes atypical and significant hardship on him in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest). To demonstrate a protected property interest, an inmate must have "an individual entitlement grounded in state law." *Couch v. Clarke*, 782 F. App'x 290, 292 (4th Cir. 2019) (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)). Without a constitutionally protected interest at stake, then the federal procedural protections do not apply. *Id.* (citing *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015)).

*Morales Mancia v. Elam*, 2020 WL 4572359, at *2. Because the nature of inmate property rights related to disciplinary fines is a contested issue, I denied the defendants' Motion to Dismiss on the asserted ground that a disciplinary fine does

not implicate any federally protected interest. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (finding that analysis as to due process protections for liberty interests "parallel[ ] the accepted due process analysis as to property").

During prison disciplinary proceedings that threaten an inmate's federally protected interest, he has limited due process rights, including: (1) advance written notice of the charges, (2) a hearing before an impartial decision maker, (3) the opportunity to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, (4) an opportunity for a non-attorney advisor, and (5) a written decision setting forth the evidence relied upon and the reasons for the disciplinary action. *Wolff v. McDonnell*, at 563–67; *see also Lennear v. Wilson*, 937 F.3d 257, 269–71 (4th Cir. 2019) (recognizing qualified right to individualized consideration of request for access to surveillance camera footage in disciplinary hearings, where inmate shows it might aid defense).

In *Lennear*, the court of appeals held that an inmate at risk of being deprived of good time credits he has earned against his prison sentence has "a qualified right to obtain and present video surveillance evidence" as documentary evidence, if it does not present particularized security concerns and it aids his defense.[2] *Lennear*,

---

[2] In *Lennear*, the court of appeals held "for the first time in this circuit that inmates at risk of being deprived of a liberty interest, like good time credits, have a qualified right to obtain *and* compel consideration of video surveillance evidence. 937 F.3d at 273–74. The defendants have not argued here that this ruling in *Lennear* is inapplicable to this case,

937 F.3d at 273.  After an inmate timely requests existing video footage or other documentary evidence,

> (1) the government bears the burden of establishing a legitimate penological justification for refusing to consider such evidence; (2) whether an asserted penological justification warrants denying consideration of such evidence must be assessed on a case-by-case basis; (3) to the extent consideration of such evidence is denied on grounds that the evidence is not pertinent, that determination must be made by the hearing officer, not prison officials involved in lodging the charge; and (4) before categorically refusing to consider such evidence, the government should assess whether any alternative avenues exist for permitting consideration of the evidence, in some form, that protect the asserted legitimate penological consideration for restricting consideration of such evidence.

*Id.*  Officials may withhold sharing institutional concerns about viewing the video footage until the disciplinary hearing is completed, or even until they are defending a court action on the matter.  *Id.* at 270.  "But if prison officials fail to identify a specific safety or correctional concern, courts may not speculate as to the officials' potential reasons for denying an inmate access to evidence in order to uphold a disciplinary decision."  *Id.*  (internal quotation marks omitted).

On summary judgment, the defendants assert that Morales Mancia received all the due process protections to which he was entitled.  I agree.  Morales Mancia received ample advance notice of the hearing; an opportunity to request witness statements or question witnesses in person and to request documentary evidence;

---

which involves only a monetary fine.  Therefore, without any briefing on the subject, I do not find warranted any discussion of this possible distinction.

assistance from a staff advisor; and a written statement of the reasons the hearing officer gave for finding him guilty and penalizing him.  Morales Mancia does not deny that he received these procedural safeguards.

I also find no evidence that Counts failed to act as an impartial fact finder in adjudicating the disciplinary charge.  Morales Mancia presents no evidence that Counts was involved in the incident at issue, and she followed procedural regulations in conducting the hearing, in reaching her verdict, and in stating her reasons for her findings.  *Wolff*, 418 U.S. at 571.[3]  The fact that Counts found that Nurse Mullins'

---

[3] In *Wolff*, the Court declined to find that the hearing committee at issue in that case was "not sufficiently impartial to satisfy the Due Process Clause."  418 U.S. at 571. Specifically, the Court noted that the committee consisted of administrative officers; the committee adjudicated only those cases that had already been investigated by officials; the committee was not given unlimited discretion, but was required to "operate within the principles stated in the controlling regulations," which included consideration of all the circumstances and required that "disciplinary measures will be taken only at such times and to such degrees as are necessary to regulate and control a man's behavior within acceptable limits and will never be rendered capriciously or in the nature of retaliation or revenge."  *Id.* (internal quotation marks omitted).

Counts adjudicated Morales Mancia's charge only after a supervisory officer signed off on it.  Counts also followed closely the disciplinary regulations while adjudicating the charge.  Morales Mancia complains that Counts gave the Reporting Officer's account more weight than his evidence, because Counts allegedly failed to investigate whether a PREA announcement was recorded in pod logbooks.  It is not disputed, however, that in preparation for the hearing, the charged inmate has an opportunity to request documentary evidence such as the pod logbook to present in his defense.  The fact that Morales Mancia failed to do so before the hearing does not have any bearing on whether Counts was or was not an impartial fact finder as required by due process principles under *Wolff*, and as stated, I find no evidence that she failed to act as an impartial fact finder.

statement and other evidence weighed in favor of guilt does not, as Morales Mancia argues, show that Counts was biased against Morales Mancia.[4]

Counts denied Morales Mancia's request for a witness statement from Eckert. In her affidavit in this case, she explains why. Eckert's cell was on the second tier of the pod on the same wall where Morales Mancia's first tier cell was. Thus, Counts reasoned that Eckert, from his top tier cell, had no reliable, personal information to offer about where Morales Mancia was in his cell on the bottom tier or where Nurse Contrell was on the pod floor. I find this reasoning to be sound.

---

[4] Morales Mancia presents evidence obtained during discovery in this case that certain prison logs did not include record of a PREA announcement being made before Nurse Mullins entered his pod that day. Morales Mancia failed to request this documentary evidence in preparation for the hearing itself, however. Thus, Counts did not have such documentation before her when she ruled that Morales Mancia was guilty. *See Lennear,* 937 F.3d at 274–75 ("[I]f an inmate fails to request access to or consideration of documentary evidence before or during a disciplinary hearing, then prison officials' failure to disclose or consider such evidence does not amount to a denial of due process.").

Morales Mancia also presented extensive additional evidence during his disciplinary appeal that he did not present to Counts, including suggestions that another female staff member had influenced Nurse Mullins to write the charge against Morales Mancia and had perhaps convinced Counts to find him guilty. Because *Wolff* did not recognize a due process right for an appeal from a disciplinary conviction, I need not consider this additional evidence, because its effect, or lack thereof, on the outcome of the appeal proceedings did not implicate any constitutionally protected right. *See Brown v. Angelone*, 938 F. Supp. 340, 345 (W.D. Va. 1996) (explaining that "*Wolff* did not mandate that prison officials provide inmates with an appeal of disciplinary hearing findings," where court had already determined no due process violations had occurred during those disciplinary proceedings). Finally, while state regulations may require more stringent procedural protections than the Constitution, "a state's failure to abide by its own law as to procedural protections is not a federal due process issue." *Id.* at 344 (citing *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990). Thus, Morales Mancia's contentions that prison officials did not follow all VDOC regulations do not give rise to any separate due process claim cognizable under § 1983.

Similarly, Counts reasoned that the video footage was not pertinent to the events charged against Morales Mancia.  Morales Mancia wanted the video to corroborate Eckert's statement about where the two nurses were standing in the pod. Counts has specifically noted, however, that Eckert's testimony itself was not relevant, given his inability to see Morales Mancia's cell.  Moreover, Counts found that none of the video footage, which would show only the pod area, could show what Morales Mancia was doing inside his cell when Nurse Mullins observed him. While Counts as the hearing officer has presented this explanation only *after* the hearing, the timing of her justification for not reviewing the video is not relevant to my due process analysis in this case.  *Lennear*, 937 F.3d at 270.  Moreover, I conclude that Counts' determination that the video was irrelevant eliminated the need for the State to show any other legitimate penological justification for her refusing to consider such evidence in this case.  *Id.* at 273.  For these reasons, I do not find that Counts violated Morales Mancia's due process rights by refusing to review the video footage.[5]

The defendants also argue that the evidence on which Counts relied was sufficient for due process purposes under *Superintendent v. Hill*, 472 U.S. 445, 456

---

[5]  Based on this determination, I also find without merit Morales Mancia's motion seeking a spoliation sanction against the defendants in light of any evidence that the defendant was prejudiced.  *See, e.g., Johns v. Gwinn*, 503 F. Supp. 3d 452, 469–70 (W.D. Va. 2020).  Accordingly, I will deny Morales Mancia's spoliation motion, ECF No. 36.

(1985) (holding that if some evidence in the record supports guilt finding, due process is satisfied).  I agree.

Addressing the sufficiency of the evidence under *Hill* "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Hill*, 472 U.S. at 455–56.  "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact."  *Id.* at 456.

At Morales Mancia's hearing, as reflected on the audio tape of the proceeding, when considered as a whole, the evidence presented weighed more heavily in favor of a finding of guilt than otherwise: Nurse Mullins reported that she saw Morales Mancia masturbating in her direction and failing to stop after being twice told to do so; Morales Mancia did not question Nurse Mullins at all about this account; Morales Mancia failed to make a statement about what he was doing during the time in question; Officer Phillips reported what Nurse Mullins told him about Morales Mancia masturbating, but said he observed the inmate exercising when he reached Morales Mancia's cell; Phillips reported that Morales Mancia later apologized, but again, Morales Mancia did not question the witness about this purported apology.  Certainly, some evidence in the record supported Counts' ruling that Morales

Mancia was guilty of the charged offense of directing a lewd act (masturbating) toward a person (Nurse Mullins).  Thus, I conclude that the evidentiary due process requirements were satisfied.

Finally, I agree that the defendants in their individual capacities have qualified immunity against Morales Mancia's claims for monetary damages.

> The doctrine of qualified immunity shields government officials from civil damages liability "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (per curium) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).  "To determine whether a complaint should survive a qualified-immunity based motion to dismiss, [courts] exercise 'sound discretion' in following the two-prong inquiry set forth by the Supreme Court . . . ." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020).  Under the first prong, the court considers whether the facts alleged by the plaintiff establish that the defendants violated a constitutional right. *Meyers v. Balt. Cnty.*, 713 F.3d 723, 731 (4th Cir. 2013) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).  Under the second prong, the court determines "whether the right at issue was 'clearly established' at the time of the [defendants'] conduct." *Id.* (quoting *Saucier*, 533 U.S. at 201, 121 S. Ct. 2151).  Officials are entitled to qualified immunity if either prong is not satisfied by the plaintiff.  *Pearson*, 555 U.S. at 244–45, 129 S. Ct. 808; *see also Cybernet, LLC v. David*, 954 F.3d 162, 169 (4th Cir. 2020) ("Specifically, to defeat a qualified immunity defense, a plaintiff must show that '(1) the defendant violated the plaintiff's constitutional rights, and (2) the right in question was clearly established at the time of the alleged violation.'") (quoting *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018)).

*Sigma Lambda Upsilon/Senoritas Latinas Unidas Sorority, Inc. v. Rector & Visitors of Univ. of Va.*, 503 F. Supp. 3d 433, 443–44 (W.D. Va. 2020).  The defendants

argue that Morales Mancia cannot defeat the second prong of the qualified immunity
analysis.

> I find this argument to be well taken.  As another judge of this court has held,
>
> the Fourth Circuit has not yet addressed this issue in a published
> decision, and that some courts disagree on whether *Sandin's* analysis
> — requiring that the particular hardship be "atypical and significant"
> — applies in the context of property deprivations, given that *Sandin*
> addressed whether a particular deprivation implicated a protected
> liberty interest.

*Bowling v. Clarke*, No. 7:19CV00453, 2020 WL 4340944, at *5 (W.D. Va. July 28,

2020) (Conrad, J.).  On the other hand, district courts in the Fourth Circuit have held

in unpublished opinions that a small monetary fine does not pose an atypical and

significant hardship on a plaintiff inmate so as to trigger federal due process

protections during disciplinary proceedings.  *See, e.g., Roscoe v. Kiser*, No. 7:18-

CV-00332, 2020 WL 4677520, at *3 (W.D. Va. Aug. 12, 2020).

To determine whether the law was clearly established for qualified immunity

purposes, a court "'ordinarily need not look beyond the decisions of the Supreme

Court, [the] court of appeals, and the highest court of the state in which the case

arose.'" *Lefemine v. Wideman*, 672 F.3d 292, 298 (4th Cir. 2012) (quoting *Edwards*

*v. City of Goldsboro*, 178 F.3d 231, 251 (1999)), *vacated on other grounds*, 568 U.S.

1 (2012).  No such court had held, as of June 2018, that a small fine imposed on a

prisoner for a disciplinary infraction, like the $15 fine in Morales Mancia's case, did

or did not trigger due process protections.

Based on the foregoing, I conclude that it was not clearly established that a small, monetary fine triggers federal due process protections during prison disciplinary proceedings. Therefore, the defendants in this case are entitled to summary judgment on the ground of qualified immunity against Morales Mancia's claims for monetary damages for alleged due process violations during the disciplinary proceedings.

### III.  Conclusion.

For the reasons stated, it is hereby **ORDERED** that the defendants' Motion for Summary Judgment, ECF No. 27, is GRANTED, and Morales Mancia's motion seeking a spoliation sanction against the defendants, ECF No. 36, is DENIED.

A separate Judgment will enter herewith.

ENTER:   September 13, 2021

/s/  James P. Jones
Senior United States District Judge